# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRITTNEY ELLIS,

                Plaintiff,

v.

WHITEWATER AUTO, INC. d/b/a
PRON-TOW TOWING and JEFFREY
ZINGG,

                Defendants.

Case No. 20-CV-37-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Brittney Ellis ("Plaintiff") brought this action on January 9, 2020 pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 (the "FLSA"), and the Wisconsin Wage Payment and Collection Laws ("WWPCL"), alleging that Defendants Whitewater Auto, Inc. d/b/a Pron-Tow Towing and Jeffrey Zingg (collectively, "Defendants") failed to pay her overtime wages and failed to pay her minimum wages—or wages at all—for her last two days of employment. ECF No. 17; ECF No. 39 at 1.

On July 18, 2022, the Court held a bench trial on Plaintiff's claims. ECF Nos. 35, 38. The Court found that Plaintiff is owed both overtime wages and wages for her last two days of employment. ECF No. 38 at 140–47. The Court ordered the parties to attempt to resolve the issues of damages and attorneys' fees amongst themselves. *Id.* at 147. When the parties were unable to resolve these issues, the Court referred the matter to Magistrate Judge Nancy Joseph for a report and recommendation. *See* Sept. 19, 2022 text order.

On February 7, 2023, Magistrate Judge Joseph issued her Report and Recommendation ("R&R"), in which she recommends awarding Plaintiff $2,354.72 in overtime pay and $2,354.72 in liquidated damages under the FLSA; $193.50 in unpaid wages and $96.75 in liquidated damages under the WWPCL; $60,720.00 in attorneys' fees; and $3,091.13 in costs. ECF No. 46. On February 17, 2023, Plaintiff filed objections to the R&R. ECF No. 47. Defendants did not file a response to Plaintiff's objections. For the reasons set forth herein, the Court will overrule Plaintiff's objections, and adopt in part and overrule in part Magistrate Judge Joseph's R&R.

## 2. LEGAL STANDARD

"When reviewing a magistrate's recommendation, the Court is obliged to analyze de novo 'those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Wicks*, No. 20-CR-143-JPS, 2021 WL 4786307, at *1 (E.D. Wis. Oct. 13, 2021) (quoting 28 U.S.C. § 636(b)(1)(C)). The Seventh Circuit has explained that

> [d]e novo review requires the district judge to decide the case based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion. The district judge is free, and encouraged, to consider all of the available information about the case when making this independent decision. A district judge may be persuaded by the reasoning of a magistrate judge or a special master while still engaging in an independent decision-making process.

*Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). "Being persuaded by the magistrate judge's reasoning, even after reviewing the case independently, is perfectly consistent with de novo review." *Id.* "That said, '[t]he magistrate judge's recommendation on a dispositive matter is not a

final order, and the district judge makes the ultimate decision to adopt, reject, or modify it.'" *Farmer v. DirectSat USA*, No. 08-CV-3962, 2015 WL 13310280, at *1–*2 (N.D. Ill. Sept. 24, 2015) (quoting *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009)).

"If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). "Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with 'the definite and firm conviction that a mistake has been made.'" *Wilkins v. Overall*, No. 316CV01324DRHRJD, 2018 WL 6617139, at *1 (S.D. Ill. Dec. 18, 2018) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).

3.    **ANALYSIS**

Plaintiff's objections to the R&R relate to Magistrate Judge Joseph's recommendation "that the hourly rates of Attorneys James A. Walcheske and Scott S. Luzi be 'no more than $400/hour.'" ECF No. 47 at 1. Thus, the Court will review this issue de novo. For the reasons set forth below, the Court overrules Plaintiff's objections and adopts Magistrate Judge Joseph's R&R on this issue.

Upon review of the remainder of the R&R, the Court finds that Magistrate Judge Joseph delivered meticulous and sound analyses on the issues of overtime pay and liquidated damages under the FLSA, unpaid wages and liquidated damages under the WWPCL, and litigation costs. Therefore, the Court will adopt those portions of the R&R and issue judgment in favor of Plaintiff for the following amounts: $2,354.72 in overtime pay and $2,354.72 in liquidated damages under the FLSA; $193.50

in unpaid wages and $96.75 in liquidated damages under the WWPCL; and $3,091.13 in costs.

However, the Court is left with the "definite and firm conviction that a mistake has been made" as to Magistrate Judge Joseph's recommendation that Plaintiff receive an award of attorneys' fees of $60,720.00. *Wilkins*, 2018 WL 6617139, at *1. While the Court concurs with Magistrate Judge Joseph's use of the lodestar to determine the fee award, based on the Court's observations over the course of the litigation and during the bench trial, the Court does not agree that the number of hours submitted by Plaintiff's counsel is reasonable. ECF No. 46 at 17 ("The starting point for determining reasonable attorneys' fees is the lodestar method, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.") (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011)). The Court further believes that reductions should be applied to the calculated lodestar amount after comparing it to variables specific to this case. *Id.* at 17–18 ("[O]nce the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained.") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)).

For the reasons set forth below, the Court will overrule Magistrate Judge Joseph's R&R on the issue of attorneys' fees, and order that Plaintiff receive an award of $16,006.30 in reasonable attorneys' fees.

### 3.1    Hourly Rate

As Magistrate Judge Joseph summarized, ECF No. 46 at 19, in the Seventh Circuit, "[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999). "However, if the district court

is unable to determine the attorney's actual billing rate because, *for example*, the attorney has no fee-paying clients, then the district court should look to the next best evidence." *Id.* (emphasis added). In turn, the next best evidence includes "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.*

Before Magistrate Judge Joseph, Plaintiff requested rates of $450/hour for both Attorney James A. Walcheske ("Attorney Walcheske") and Attorney Scott S. Luzi ("Attorney Luzi"), and $325/hour for Attorney Matthew Tobin ("Attorney Tobin"). ECF No. 40 at 3. Plaintiff's counsel explains that Attorneys Walcheske's and Luzi's "usual and customary rates" increased from $400/hour to $450/hour as of April 1, 2022. *Id.* Nonetheless, Plaintiff requests rates of $450/hour for Attorneys Walcheske and Luzi for all entries billed in this litigation dating back to January 2020. ECF No. 40-1. In support of the motion for fees, Plaintiff attaches (1) invoices paid by fee-paying clients showing a billing rate of $450/hour for Attorneys Walcheske and Luzi; (2) three cases where Attorneys Walcheske and Luzi were court-approved at billing rates of $450/hour; and (3) declarations from Attorney Robert Mihelich ("Attorney Mihelich"), who avers that his hourly rate is $450/hour, and Attorney David Zoeller, who avers that his hourly rate is $500/hour. ECF Nos. 41, 42.

Plaintiff's objections are grounded on arguments that Defendants did not satisfy their burden of demonstrating why a lower hourly rate should be awarded as to Attorneys Walcheske and Luzi, and that Magistrate Judge Joseph erred by failing to use the invoices paid by Attorneys Walcheske's and Luzi's fee-paying clients before turning to other evidence. ECF No. 47. Plaintiff also takes issue with Magistrate Judge

Joseph's reduction of Attorneys Walcheske's and Luzi's rates to $400/hour "based on nothing more than counsel's years of practice as compared to" other attorneys. *Id.* at 4 n.2.

Plaintiff challenges the fact that Magistrate Judge Joseph set aside invoices paid by Plaintiff's counsel's fee-paying clients and turned right away to a review of the next best evidence. However, in *Spegon*, invoices paid by fee-paying clients were only one example of how a district court may determine an attorney's actual billing rate. 175 F.3d at 555. And, following *Spegon*, the Seventh Circuit held that "[a]lthough the district court must consider [the] submitted evidence . . . the court is entitled to determine the probative value of each submission and must arrive at its own determination as to a proper fee." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). In *Small*, the Seventh Circuit affirmed the district court's decision that sample invoices were of limited probative value because they "failed to distinguish" between FLSA overtime cases and other types of cases. *Id.* As the court explained, FLSA cases "are not unusually complicated" and, therefore, "[h]ourly rates awarded in non-FLSA overtime cases are not particularly relevant as evidence of" an attorney's market rate in an FLSA case. *Id.* (quoting *Holyfield v. Quinn & Co.*, No. 90-CV-507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991)). Unfortunately, Plaintiff's proffered invoices do not list to which type of case they relate and therefore suffer from the same infirmity. ECF No. 40-1.

The Court thus turns to the next best evidence. The three cases cited by Plaintiff in which $450/hour rates for Attorneys Walcheske and Luzi were approved are inapposite. ECF No. 40 at 3. Two of the three cases involved unopposed motions for attorneys' fees. *See Smith v. Alexian Vill. of Milwaukee, Inc.*, No. 20-CV-421-BHL, ECF No. 110 (E.D. Wis. Sept. 29, 2022);

*Stephani v. JC Sols.*, No. 21-CV-458-WCG, ECF No. 30 (E.D. Wis. Sept. 2, 2022). The third case was decided in a report and recommendation on a motion for default judgment, which report and recommendation was ultimately overruled. *Capocasa v. Milwaukee Alarm Co.*, Case No. 22-CV-429-SCD, ECF No. 18 (E.D. Wis. Sept. 5, 2022); *id.*, ECF No. 29 (E.D. Wis. Oct. 26, 2022).

Recently, Magistrate Judge Joseph observed that "[t]here is a dearth of authority supporting a reasonable hourly rate of $450/hour" in FLSA cases. *Jimenez v. Illini Precast, LLC*, No. 19-CV-1623, 2022 WL 4533856, at *4 (E.D. Wis. Sept. 28, 2022), *report and recommendation adopted in part, rejected in part*, No. 19-CV-1623-JPS, 2023 WL 1777528 (E.D. Wis. Feb. 6, 2023). Based on that determination in the *Jimenez* case, Magistrate Judge Joseph recommended, and this Court approved, a $400/hour rate for Attorney Mihelich, who has significantly more years of experience than Plaintiff's counsel. *Id.* Thus, the Court does not find the proffered declaration from Attorney Mihelich probative of Attorneys Walcheske's and Luzi's entitlement to an hourly rate of $450 in the present matter. The Court continues to concur that there exists a "dearth of authority" supporting a higher rate in FLSA cases. This is particularly so in light of the Court's concerns, enunciated below, about FLSA cases becoming nothing more than "plug-and-chug" mechanisms to churn as high a fee as possible. The Court will overrule Plaintiff's objections and will adopt Magistrate Judge Joseph's R&R on the issue of Plaintiff's counsel's hourly rates.

### 3.2 Number of Hours Expended

"A prevailing plaintiff is entitled to only '*reasonable* attorney's fees' under the FLSA." *Koch v. Jerry W. Bailey Trucking, Inc.*, 51 F.4th 748, 757 (7th Cir. 2022) (quoting 29 U.S.C. § 216(b) (emphasis in original)). "While the

award of fees [under the FLSA] is mandatory," "district courts have broad discretion to assess the reasonableness of an attorney's fees and cut hours that they find to be unjustified." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 406 (7th Cir. 1999); *Koch*, 51 F.4th at 757. "In this vein, counsel for the fee applicant is expected to exercise 'billing judgment' when presenting their bill to the court, by 'winnowing the hours actually expended down to the hours reasonably expended.'" *Novoselsky v. Zvunca*, No. 17-CV-427-JPS, 2018 WL 941731, at *2 (E.D. Wis. Feb. 16, 2018) (quoting *Spegon*, 175 F.3d at 552). "The 'winnowing' process involves excluding not only hours 'that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance.'" *Id.* (quoting *Spegon*, 175 F.3d at 553).

The Court has scrutinized the briefing that was submitted to Magistrate Judge Joseph, including Defendants' contentions that the claimed attorneys' fees were excessive, unnecessary, and redundant, and that such hours should be excluded under the lodestar method. ECF No. 43 at 3 (citing cases). Defendants aver, in support of this argument, that Plaintiff's initial "failure to prosecute . . . ironically caused the overlitigation" from June 2022 through the instant R&R. *Id.* Defendants take specific issue with the fact that Defendant Jeffrey Zingg's ("Defendant Zingg") deposition was taken on the eve of the July 18, 2022 bench trial, leading to supplemental discovery needing to be conducted in open court during trial. *Id.* Defendants also argue that Plaintiff's claimed fees would lead to the "absurd result" of enriching her attorneys well beyond the damages she recovered in this case. *Id.* at 4.

Plaintiff's counsel responded to these arguments. ECF No. 45 at 2–3 & n.2 (arguing that the claimed hours are not excessive, redundant, or

otherwise unnecessary). While the Court parts ways with Magistrate Judge Joseph on these issues, this is not a case where defense counsel failed to raise their concerns, thus depriving Plaintiff's counsel of an opportunity to defend against them. *See Smith v. Great Am. Rests., Inc.*, 969 F.2d 430, 439–40 (7th Cir. 1992) (explaining that "the defendant is entitled to respond to the hours and expenses contained in the fee petition, and additionally, that plaintiff's counsel is entitled to be heard on the matter before such a significant reduction in the requested hours is made by the court").

The Court agrees with Defendants. Regrettably, in the almost 36 years that this Judge has been on the bench, the Court has seen few cases as poorly prepared for trial as this one. As the Court observed at trial,

> keeping in mind that this lawsuit was filed in January of 2020, . . . to wait almost two and a half years after the lawsuit was filed to engage in testimony under oath and the discovery of the additional records really does not speak well for the approach good litigators should have taken in prosecuting the case. In fact, much of what was said in the courtroom today might be charitably described as open discovery being taken in the context of a trial.

ECF No. 38 at 144. Indeed, the four-hour bench trial in this action is best described as a primetime special of Judge Judy, where the parties confronted their dispute face-to-face, dug into the documentary evidence, and took testimony, all for the very first time in open court.

Plaintiff's counsel's billing records support Defendants' observations and arguments. ECF No. 40-2. Although the case was filed in January 2020, between January 6, 2020 and April 8, 2022, Plaintiff's counsel billed only approximately 25 hours of the approximately 154 hours submitted as part of the fee petition. *Id.* at 1. Not a single of these billing entries relates to efforts to settle the case or to reach an early resolution.

Indeed, in the Court's view, the first billing entries that pertain to settlement efforts are dated June 2022, one month before trial. This reveals a complete lack of "overarching concern in the first instance as to whether the [ultimate expenditures] were both reasonable and necessary." *United States v. Harris*, 491 F. Supp. 3d 414, 422 (E.D. Wis. 2020). Further, of the 154 hours submitted as part of the fee petition, approximately another 22 of those hours relate to work spent drafting the referral request to Magistrate Judge Joseph and the moving brief in support of Plaintiff's damages calculations and attorneys' fees.

With respect to the hours submitted as a whole, the Court has carefully reviewed the 186 entries and separated them into categories as follows:[1] 6.4 hours spent drafting discovery requests;[2] 7.1 hours drafting pleadings that were filed with the Court;[3] 0.9 hours drafting pleadings that were not filed with the Court;[4] 19.3 hours meeting with, emailing, or telephoning other attorneys in Plaintiff's counsel's firm, opposing counsel,

---

[1]Plaintiff's billing records claim a total of 153.6 hours, but the Court's calculations (which may be attributed to Microsoft Excel's automatic rounding programming) lead to a total of 154.6 hours.

[2]*See* ECF No. 40-2 at entries dated 11/16/21, 11/17/21, 5/13/22, 6/8/22, 6/20/22.

[3]*See* ECF No. 40-2 at entries dated 1/8/20, 1/9/20, 1/13/20, 12/22/20, 2/12/21, 2/15/21, 4/12/21, 4/19/21, 4/20/21, 12/20/21, 2/15/22, 6/24/22, 7/5/22, 7/17/22.

[4]*See* ECF No. 40-2 at entry dated 11/30/21.

or Plaintiff;[5] 16.8 hours reviewing files, emails, and voicemails;[6] 9.2 hours traveling to court and attending conferences;[7] 1.9 hours traveling to court to drop off files;[8] 11.9 hours preparing for the 2.2-hour deposition of Defendant Zingg;[9] 22.8 hours drafting the pretrial report;[10] 11.1 hours drafting the moving and reply trial briefs;[11] 23.4 hours preparing exhibits or arguments for trial;[12] and 21.6 hours drafting the damages and fee petitions.[13]

With the hours categorized and the parties' respective positions detailed, the Court turns to the reasonableness, necessity, and excessiveness of the claimed hours. As an initial matter, Plaintiff claims 2.5 hours for a conference between Attorney Walcheske and Attorney Kirsten Cooper Hendra ("Attorney Hendra.") ECF No. 40-2. Attorney Hendra is not listed

---

[5] *See* ECF No. 40-2 at entries dated 1/6/21, 1/29/21, 2/5/21, 4/12/21, 4/20/21, 5/11/21, 6/29/21, 11/4/21, 11/17/21, 11/18/21, 11/24/21, 11/30/21, 12/13/21, 4/8/21, 5/13/21, 6/1/21, 6/2/21, 6/8/21, 6/16/21, 6/20/21, 6/24/21, 6/27/21, 6/30/21, 7/1/21, 7/2/21, 7/5/21, 7/6/21, 7/7/21, 7/13/21, 7/14/21, 7/15/21, 7/17/21, 7/22/21, 8/8/21, 8/15/21, 8/16/21, 8/31/21, 9/16/21, 10/5/21, 10/6/21.

[6] *See* ECF No. 40-2 at entries dated 1/7/20, 1/13/20, 12/18/20, 3/1/21, 3/5/21, 4/9/21, 4/12/21, 12/6/21, 12/13/21, 12/19/21, 6/1/22, 6/2/22, 6/16/22, 6/27/22, 7/1/22, 7/2/22, 7/4/22, 7/5/22, 7/12/22, 7/16/22, 7/17/22, 8/15/22, 9/19/22, 10/6/22, 10/7/22.

[7] *See* ECF No. 40-2 at entries dated 7/29/21, 7/12/22, 7/18/22.

[8] *See* ECF No. 40-2 at entries dated 7/6/22, 7/7/22.

[9] *See* ECF No. 40-2 at entries dated 6/26/22, 6/27/22, 6/28/22.

[10] *See* ECF No. 40-2 at entries dated 6/24/22, 6/25/22, 6/29/22, 6/30/22, 7/4/22, 7/5/22, 7/6/22.

[11] *See* ECF No. 40-2 at entries dated 7/5/22, 7/6/22, 7/7/22, 7/8/22.

[12] *See* ECF No. 40-2 at entries dated 7/2/22, 7/4/22, 7/5/22, 7/13/22, 7/16/22, 7/17/22, 7/22/22.

[13] *See* ECF No. 40-2 at entries dated 9/16/22, 10/4/22, 10/5/22, 10/6/22, 10/7/22, 10/10/22.

on Plaintiff's fee application (and has not signed any filings or even noticed an appearance in this case), and these hours will be struck.[14]

Next,[15] the Court turns to the exorbitant amount of hours spent preparing the pretrial report. As this branch of the Court has previously recognized, the Seventh Circuit has held that 13.7 hours spent to prepare a single, four-page document that cites five cases were too many. *Novoselsky*, 2018 WL 941731, at *3 (citing *Kathrein v. Monar*, 218 F. App'x 530, 532 (7th Cir. 2007)). The pretrial report, which *both parties prepared jointly*, apparently required 22.8 hours of Attorney Walcheske's time. The body of the pretrial report is seven pages long and cites no case law, ECF No. 28, and largely reiterates what is already written in the operative complaint, *compare id. with* ECF No. 17. The same is true as to the parties' stipulated findings of fact. *Compare* ECF No. 28-1 *with* ECF No. 17. Plaintiff's proposed

---

[14]The billing records also state that Attorney Hendra is to be billed out at a rate of $350/hour, but she was actually billed out at $450/hour. *Id.*

[15]In the Court's view, many of the hours Plaintiff claims relate to clerical or administrative work that is delegable—and should have been delegated—to a non-lawyer. *See Novoselsky*, 2018 WL 941731, at *4 (quoting *Jenkins by Agyei*, 491 U.S. 272, 288 n.10 (1989)). The 1.9 hours spent traveling to and from the court to drop off files are a prime example. By way of additional example, Attorney Walcheske claims hours spent forwarding deposition information to opposing counsel, coordinating with court reporters, adding signature pages to a document, separating one document into two documents, and preparing computers for trial. ECF No. 40-2. Even if Attorney Walcheske does not employ non-attorneys, he should have exercised his billing judgment and omitted these entries from the fee application. *See Novoselsky*, 2018 WL 941731, at *2.

Accordingly, the Court finds that entries on the following days, comprising a total of 6.5 hours, should be struck as containing nearly entirely administrative work: 1/9/20, 5/13/22, 6/8/22, 6/20/22, 6/21/22, 6/27/22, 7/4/22, 7/5/22, 7/6/22, 7/13/22, 7/17/22, 9/16/22. However, because Defendants did not raise this argument and Plaintiff's counsel was unable to respond to it, as they were able to respond to the other arguments, the Court will not strike these hours. *See Smith*, 969 F.2d at 439–40.

conclusions of law again copy, in large part, from the complaint and the answer, with one added case citation. *Compare id. with* ECF No. 17. Finally, the pretrial report was submitted after Defendant Zingg's deposition was taken. At this juncture, there should have been significantly more for Plaintiff to work with than the pleadings, which again evinces a complete lack of case strategy or forethought. Under these circumstances, 22.8 hours is far too high.

While the Court has endeavored to address Plaintiff's counsel's billing records in granular fashion, to choose certain entries to strike, where all entries relating to the pretrial report refer vaguely to "drafting" and "reviewing," would be arbitrary. *See, e.g., Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) (recognizing "the impracticalities of requiring courts to do an item-by-item accounting"). Therefore, the Court will reduce the 22.8 hours by 33%, or to 15.2 hours. *See Novoselsky*, 2018 WL 941731, at *4 (reducing hours by 25% to account for "excessive time expenditures and non-compensable time"); *see also Spegon*, 175 F.3d at 552–53 (affirming roughly 75% reduction of hours billed to only three hours where attorney did not exercise billing judgment to exclude excessive, redundant, or otherwise unnecessary hours).

In the same vein, the Court determines that the following claimed hours represent excessive, redundant, and otherwise unnecessary expenditures that all relate to Defendants' claims of overlitigation: 16.8 hours reviewing files, emails, and voicemails; 19.3 hours making calls, sending emails, and participating in meetings; 11.9 hours preparing for Defendant Zingg's two-hour deposition; and 23.4 hours preparing for the four-hour bench trial. *See Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 684 (N.D. Ill. 2012) (citing *Goodale v. George S. May Intern. Co.*, No.

09-CV-7848, 2010 WL 2774013, at *5–*6 (N.D. Ill. July 14, 2010) (reduction in number of hours "for the initial lodestar calculation where the attorney reviewed the same document multiple times or spent an excessive amount of time reviewing")); *see Urnikis-Negro v. Am. Fam. Prop. Servs.*, No. 06-CV-6014, 2009 WL 212122, at *2 (N.D. Ill. Jan. 26, 2009) (explaining that it is unreasonable to incur inefficiencies in "a modestly-sized and relatively uncomplicated case" and reducing excessive hours spent preparing for a short bench trial); *Bellamy v. City of Chicago*, No. 15-CV-2678, 2017 WL 3675729, at *7 (N.D. Ill. Aug. 27, 2017) (reducing number of hours billed by one-third for time entries reflecting "drafting and reviewing emails").

As Defendants argued before Magistrate Judge Joseph, these hours increased exponentially and without rational reason, revealing Plaintiff's utter lack of strategy, in the month leading up to trial. While Plaintiff's counsel argues that the fact that Plaintiff won at trial renders all of these hours necessary, ECF No. 45 at 2, the Court simply does not agree. Successful prosecution does not always—and does not here—equate with efficient prosecution.

The Court will reduce each of these categories of entries by 33%, or to: 11.2 hours for reviewing files, emails, and voicemails; 12.9 hours for making calls, sending emails, and participating in meetings; 8 hours for preparing for Defendant Zingg's two-hour deposition; and 15.6 hours for preparing for the four-hour bench trial. Following these reductions, the total number of reasonable hours expended is 120.8.[16] Because

---

[16]The approximately 22 hours Plaintiff's counsel spent on the damages and fee petitions are disproportionate to the number of hours reasonably expended on merits litigation. *See Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988). And, as Defendants argue, Plaintiff's overlitigation is what led to that briefing in the first place. ECF No. 43 at 3. However, given the importance of that briefing (and

approximately 6% of the 154.6 hours claimed in the fee petition were submitted by Attorney Tobin, who is billed out at a rate of $325/hour, as compared to Attorney Walcheske's and Attorney Luzi's rates of $400/hour, the Court will apply the $325/hour rate to 6% of the 120.8 hours, and the $400/hour rate to the remaining hours. This results in a total revised lodestar figure of $47,780.

### 3.3 Adjustments to the Lodestar

The Court's inquiry does not end with the calculation of the lodestar amount. As explained above, once the lodestar is calculated, the Court has the discretion to adjust the lodestar upward or downward based on a variety of factors. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3. "[T]he most critical factor is the degree of success obtained," which is part of courts' analyses into the eighth *Hensley* factor. *Id.* at 436. When considering this factor in FLSA cases, the Seventh Circuit has held that, "although the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court

---

Plaintiff's opportunity to be heard on the other issues Defendants raise) to the Court's determinations in this Order, the Court will not proportionally reduce these hours.

should consider when contemplating a reduction of the modified lodestar amount." *Spegon*, 175 F.2d at 558.

Here, Plaintiff's total recovery, as set forth above, is $4,999.69. The modified lodestar figure of $47,780 represents a 9.5:1 ratio of attorneys' fees to Plaintiff's recovery.[17] "A fee request that dwarfs the damages award might raise a red flag." *Koch*, 51 F.4th at 757 (quotations omitted) (finding fee request for triple what clients received disproportionate).

With respect to multiple of the *Hensley* factors, in the FLSA context, "[b]illable hours that would be appropriate for a sprawling class action" are not appropriate where "only a fraction of the class members" end up recovering. *Koch*, 51 F.4th at 757. While Plaintiff did not plead her claims as class or collective claims and never moved for class or collective certification, it is certainly a salient factor that the action here was a single plaintiff action.

The importance of this observation becomes even more apparent when the Court reviews the attorney fee petitions Plaintiff's counsel has submitted, and which the Court has approved, in other FLSA actions. *See, e.g., Brooks v. Gateway Plastics, Inc.*, 20-CV-1318, ECF No. 29 (Dec. 30, 2022) (approving Plaintiff's counsel's unopposed motion for $32,500 in attorneys' fees for work performed with respect to 172-person class and eight-person collective); *Davis v. Eden Senior Care LLC*, 21-CV-823, ECF No. 31 (Jan. 31, 2023) (approving Plaintiff's counsel's unopposed motion for $26,000 in attorneys' fees for work performed with respect to 69-person class and 12-person collective); *Rosa v. Clark Equip. Co.*, 21-CV-1239, ECF No. 20 (Feb. 16,

_____

[17]Before Magistrate Judge Joseph, Plaintiff requested $67,920 in attorneys' fees and a $5,353.69 award in damages. ECF No. 39 at 24. This is a 12.7:1 ratio of attorneys' fees to Plaintiff's recovery.

2023) (unopposed motion for $26,000 in attorneys' fees for work performed with respect to 103-person class and seven-person collective).

Recently, the Court has observed an influx of FLSA collective actions, and an increase in fee petitions related to FLSA collective actions. Therefore, the Court is careful to note how courts treat the *Hensley* factors in FLSA cases as compared to other actions. As the Northern District of Illinois commented over 25 years ago regarding FLSA cases:

> [W]hat is more disturbing than all the time and energy unnecessarily spent on fee litigation is how the courts have become coopted by the lawyers in their insatiable pursuit of attorney's fees. Presently, there is little or no incentive for lawyers in fee-shifting situations to resolve a case before rushing to the courthouse. The sooner the meter begins to run the better. And once the meter is turned on, it becomes extraordinarily expensive to turn it off. It is all too frequently the case that the only obstacle standing in the way of a settlement between a plaintiff and a defendant is the plaintiff's lawyer and his unreasonable demand for fees.

> Sadly, the result of this predicament is that defendants are often forced to litigate cases that they would rather settle and plaintiffs are obliged to forgo settlements that they would otherwise accept—all in an effort to secure "reasonable attorney's fees" for the plaintiff's lawyer. The only alternative to this Hobbesian nightmare is for a defendant to settle and accede to the plaintiff's lawyer's demands for fees at as an early a date as possible, thereby avoiding the possibility of a $200 judgment accompanied by a $20,000 petition for fees. Thus, the parties are held hostage and this Court is left feeling that it has become a party to an extortion.

*Spegon v. Cath. Bishop of Chi.*, 989 F. Supp. 984, 987 (N.D. Ill. 1998), *aff'd*, 175 F.3d 544 (7th Cir. 1999).

These critiques ring even more true today than they did in 1998. Approximately 20% of this branch of the Court's non-prisoner civil

caseload are FLSA collective action cases. It seems that all-too-eager lawyers wait in the wings for the next company to make an administrative error in wage calculations, no matter how miniscule, with dollar signs in their eyes. Sadly, this unyielding attentiveness to fees operates at the expense of retribution for the plaintiffs, the latter unquestionably being Congress's central goal in enacting fee-shifting statutes such as the FLSA. These cases have "unfortunately given way to a flood of insignificant claims being litigated in the hopes of large attorney's fees." *Id.* Indeed, even in the larger class and collective actions, individual class members often receive just a handful of dimes to rub together, while the lawyers further pad their bank accounts.

At the end of the day, the Court is of the opinion that, in many cases, there are more prudent uses of the public's and companies' limited resources. For example, first, companies could hire an auditor to ensure books are kept accurately and wages are paid out in accordance with the law. The average auditor in the United States charges $29 per hour. *See How Much Do Auditor Jobs Pay per Hour?*, ZipRecruiter (last updated Mar. 8, 2023), *available at* https://www.ziprecruiter.com/Salaries/Auditor-Salary-per-Hour (last visited Mar. 15, 2023).

Second, companies could hire a payroll clerk to ensure accurate collection, organization, and data entry with respect to timesheets and the payroll system as a whole. The average payroll clerk in the United States charges $20 per hour. *See How Much Do Payroll Clerk Jobs Pay per Hour?*, ZipRecruiter (last updated Mar. 8, 2023), *available at* https://www.ziprecruiter.com/Salaries/Payroll-Clerk-Salary-per-Hour (last visited Mar. 15, 2023).

Third, companies could invest in computer software, designed specifically for payroll, with the functionality to "keep accurate records, so [companies] don't get fined." *Best Payroll Software*, Investopedia (last updated Jan. 4, 2023), *available at* https://www.investopedia.com/best-payroll-software-5088638 (last visited Mar. 15, 2023). The average cost of this software is $30 per month, plus an additional $4 to $8 per employee per month. *Id.*

Ideally, these methods should prevent litigation at the outset, thus preserving precious judicial resources for only the most serious cases. And, importantly, the costs associated with these alternatives are a far cry from the $400 per hour that Plaintiff's counsel will recover in this action. Should companies not implement these tactics on their own, courts could impose a right to cure procedure at the outset of all newly filed FLSA cases. Such a procedure would allow the defendant the chance to adopt one of these alternative plans and pay for past violations prior to the meter running too high on the plaintiff's attorneys' fees, while also supporting the equally important goal of conserving judicial resources. This branch of the Court will be adopting such a procedure.

As mentioned, there will certainly be cases where serious wage-and-hour issues persist and must be litigated. FLSA litigation has its time and place; however, it serves little purpose where attentive front-end auditing may do the trick more cost-effectively and efficiently. Ultimately, in this case however, "this Court must rely on its limited discretion and the good faith of the parties to curb these abuses and to ensure that [fee-shifting] statutes actually benefit the named plaintiff and society at large." *Spegon*, 989 F. Supp. at 987.

In *Spegon*, the Seventh Circuit affirmed the district court's reduction of reasonable hours expended from 10.1 to 3, and then further reduced the resulting lodestar figure by 50% to account for the *Hensley* factors in the FLSA context, as laid out above. *Spegon*, 175 F.3d at 559. In another case, the district court first modified the lodestar figure, and then reduced the resulting amount by 50% to account for the plaintiff's limited success. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 992 F. Supp. 1032, 1039 (N.D. Ill. 1998), *rev'd on other grounds*, 177 F.3d 593 (7th Cir. 1999). The court then further reduced the lodestar figure by an additional 33% to account for the plaintiff's "unnecessarily prolonged litigation." *Id.* at 1040.

The Seventh Circuit affirmed the district court on the initial 50% reduction but reversed and remanded for further proceedings as to the second 33% reduction. *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 598–99 (7th Cir. 1999). The reversal and remand as to the second 33% reduction was based only on the fact that the district court ostensibly considered as a factor that the parties failed to mediate before the district court's law clerk. *Id.* On remand, the district court explained that it "in no way based its decision" to further reduce the lodestar by 33% on this factor, and reached the same conclusion as before. *Connolly v. Laidlaw Indus., Inc.*, 77 F. Supp. 2d 903, 904 (N.D. Ill. 1999). The court explained instead that its "finding that counsel unreasonably delayed settlement for his own benefit was amply supported by the court's observation of counsel's repeated behavior and attitude toward settlement." *Id.* at 904–05.

The Court finds that the same reductions should be applied here. A reduction for limited success includes an assessment of whether the plaintiff's level of success "makes the hours reasonably expended a satisfactory basis for making a fee award." *Montanez v. Simon*, 755 F.3d 547,

556 (7th Cir. 2014). Although Plaintiff won on her claims, as in *Montanez*, "[her] success was severely limited: just [approximately $5,000] in damages, a minimal victory in light of the time expended to achieve it." *Id.* Further, as the Court has already explained, this case presents a straightforward legal claim based on facts derived from a handful of documents, all as applied to only one plaintiff. This is not a case where "the complexity of the facts or the relevant doctrine, or [] the vindication of an important public interest" justifies Plaintiff's counsel's exorbitant expenditures of time. *Id.* Instead, here, "the disproportionate fees [are] an indicator that [Plaintiff and her] attorneys unrealistically believed these claims were worth far more than recovered." *Id.* Or, even more regrettably, it is a case that is transparently "all about fees." *Connolly*, 177 F.3d at 598.

As a result, the Court will apply a 50% reduction to the lodestar to account for the limited success and the fees versus damages disparity. *See Koch*, 51 F.4th at 758 ("[A] court may . . . consider the ratio of damages and fees as one factor when contemplating a reduction" based on limited success). The lodestar now stands at $23,890.

Like in *Connolly*, the Court will further reduce the lodestar by an additional 33% to account for Plaintiff's unnecessary prolonging of the litigation and lack of diligent prosecution. Plaintiff chose to take Defendant Zingg's deposition on the eve of trial, which led to the uncovering of additional discovery that had to be taken in open court. At trial, it became wholly clear to the Court that the parties were facing each other and the meat of their dispute for the very first time, and that little to no planning efforts had been made on the front end. This case is further devoid of any motion practice or efforts to strategize against shortcomings, such as how to circumvent Defendants' apparent intent to close their business. *Compare,*

*e.g.*, *Jimenez*, 2023 WL 17777528, at *5–*7 (discussing, in support of fee award in FLSA case, extensive depositions and research into strategy to ensure recovery in light of financial concerns as to the defendant's business).

Had Plaintiff's counsel diligently prosecuted this case, the parties could have been in a position to settle prior to trial. Indeed, in the parties' interim and final settlement reports, ECF Nos. 22 and 23, the parties submit that they attempted to work towards a settlement during the second quarter of 2021. However, the billing records, ECF No. 40-2, do not reflect these discussions. Of course, as the *Spegon* court observed, perhaps it made little sense for Plaintiff's counsel to try to settle early, thinking that they could continue to hold the case in limbo, while the meter churned on as to fees. *Spegon*, 989 F. Supp. at 987. The fact, too, that the parties were unable to even resolve the issues of damages and fees amongst themselves, leading to further litigation on these issues, suggests an intent to drive up the bill.

There is simply no reason why this case should have proceeded to trial, and similarly, no reason why hundreds of hours were spent synthesizing a handful of records for a total of four hours before the Court. An auditor could have done the same work in significantly less time and for significantly less money—whether before litigation began, as would be most efficient, or on contract with counsel after it began. In the final analysis, as this Court has commented before, the claimed fees in this case "may be best described as nothing short of a runaway train." *Harris*, 491 F. Supp. 3d at 422. The Court will award Plaintiff attorneys' fees in the amount of $16,006.30, which accounts for a second, 33% reduction of the lodestar. Parenthetically, this award is still hefty in light of Plaintiff's damages award.

4.    **CONCLUSION**

As explained in the body of this Order, the Court overrules Plaintiff's objections to Magistrate Judge Joseph's R&R. ECF No. 47. The Court adopts in part and overrules in part Magistrate Judge Joseph's R&R. ECF No. 46. The Court awards Plaintiff $2,354.72 in overtime pay and $2,354.72 in liquidated damages under the FLSA; $193.50 in unpaid wages and $96.75 in liquidated damages under the WWPCL; $16,006.30 in reasonable attorneys' fees; and $3,091.13 in costs.[18]

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 46, be and the same is hereby **ADOPTED in part and OVERRULED in part**;

**IT IS FURTHER ORDERED** that Plaintiff's objections to Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 47, be and the same are hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Plaintiff be awarded, and Defendants shall be jointly and severally liable to Plaintiff for, $2,354.72 in overtime pay and $2,354.72 in liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 201; $193.50 in unpaid wages and $96.75 in liquidated damages under the Wisconsin Wage Payment and Collection

---

[18]"A manager may be personally liable for FLSA violations if he or she acted on behalf of the corporation to cause the violations." *Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784, 794 (N.D. Ind. 2020). Further, "[a] corporate officer may be personally liable even if he or she has no ownership interest, if the officer effectively dominates its administration." *Id.* (internal citations omitted). As the Court held at trial, "as the owner and the person who's running payroll . . . it was incumbent upon Mr. Zingg . . . to make sure that the records are accurate." ECF No. 38 at 139. Therefore, the judgment will operate as against both Defendant Whitewater Auto, Inc. d/b/a Pron-Tow Towing and Defendant Zingg personally.

Laws; $16,006.30 in reasonable attorneys' fees; and $3,091.13 in costs, together with post-judgment interest as permitted by law; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of March, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge